**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HAYCOOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-cv-05092-NKL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Robert Haycook appeals the Commissioner of Social Security's final decision denying his application for disability insurance benefits under Title II of the Social Security Act. The decision is affirmed.

## I.    Background

Haycook was born in 1959. He alleges he became disabled beginning 11/30/2013. He worked intermittently as a paramedic until April 2015. Haycook first applied for Disability Insurance Benefits on 12/27/2013 and was denied on 5/20/2014. Haycook filed a Request for Hearing on 7/3/2014. The Administrative Law Judge held a hearing on 6/11/2015 and denied his application on 10/23/2015. Haycook submitted additional evidence to the Appeals Council, which denied his request for review on 6/6/2016.

### A.    Medical history

### 1. History Considered by the Administrative Law Judge

In January 2013, Haycook visited his primary care physician, Michael Knapp, D.O., where he reported experiencing depression, anxiety, diabetes, neck pain, difficulty sleeping,

troubled feelings, isolation, lack of appetite, and feelings of depression. Tr. 452. Haycook presented with similar symptoms in April 2013 as well as presenting muscle spasms. Dr. Knapp noted Haycook's diabetes was uncontrolled. Tr. 470, 475.

In August 2013 Haycook twice presented to the emergency room with abdominal pain, nausea, and vomiting. He also saw Dr. Knapp for treatment regarding neck and lower cervical spine pain. On August 16, 2013, Haycook underwent a C4-5 and C5-6 anterior cervical discectomy and fusion. At his follow-up appointments, Haycook reported the left arm pain and numbness he felt pre-surgery was gone but that he still experienced neck muscle spasm pain. Tr. 667, 669. He was admitted through the emergency room again in October and November 2013 presenting abdominal pain, vomiting and severe neck pain. Tr. 615, 622. He was diagnosed with hypokalemia, uncontrolled diabetes and chronic neck pain.

In December 2013, Haycook was admitted and underwent a psychological evaluation after telling his sister he was going to harm himself. Tr. 641. After evaluation, Haycook was diagnosed with adjustment disorder with disturbance of emotion and conduct, and was noted to have poor coping skills. Tr. 648. He was discharged two days later. Haycook was seen by Dr. Knapp and later presented to the emergency room with continued neck pain and spasms made worse with certain movements. Tr. 492, 359.

In January 2014, Haycook reported problems with his left arm jerking, causing him to drop items. Tr. 677. He reported improvement with his neck pain, but that he stopped working as a paramedic due to the physical activity it required. *Id.* In April 2014 Haycook saw Dr. Knapp and Dr. Curtis reporting muscle spasms in his neck and "dragging of his left foot." Tr. 704, 787. In May 2014 Haycook saw Dr. Knapp for diabetes management where he reported he had not been monitoring his blood sugars at home despite Dr. Knapp's referral to a website where he could obtain test strips for free. Tr. 781, 792. In October 2014 Haycook presented to the

emergency room with elevated blood sugar levels, confusion, and slurred speech. Tr. 716. Haycook also reported lightheadedness, tunnel vision, general weakness, abdominal pain, nausea, and vomiting. Tr. 716.

In March 2015 Haycook was taken to the emergency room by EMS after experiencing near-syncope. Tr. 748. Haycook also reported abdominal pain, dizziness, lightheadedness, nausea, and weakness. *Id.* An ECG revealed a right bundle branch block and sinus tachycardia. Tr. 750. He was diagnosed with abdominal pain, near syncope, dehydration, and hypokalemia and was discharged.

In April 2015 Haycook began seeing Cynthia Lungstrum, LSCSW at Trinity Life Counseling Center, for individual therapy. Tr. 757. Ms. Lungstrum completed a mental medical in which she indicated Haycook had been diagnosed with Post Traumatic Stress Disorder that impaired his ability to work. Tr. 760.

## 2. Additional History Submitted to the Appeals Council

On June 2, 2015, Haycook saw William Nicholas, M.D., at the Bentlage Heart and Vascular Institute, for an evaluation of a progressive dyspnea. Tr. 799. A stress ECG revealed normal results, but did indicate a resting heart rate of 100. *Id.* In September 2015, Haycook presented to the emergency room with dysuria, bladder pressure and left flank pain. Tr. 868.

Haycook returned to the emergency room in October 2015 with neck pain radiating into his arms. Tr. 812. He reported difficulty with grasping and gripping objects as well as abnormal facial movements and difficulty swallowing. *Id.* A cervical CT revealed mild to moderate degenerative disc changes and facet joint arthritis at multiple levels, as well as mild to moderate overall central spinal canal stenosis at C5-6. Tr. 818. He was admitted and saw Daniel Dagen, D.O. for a neurologic evaluation of his involuntary facial movements. Tr. 889. Dr. Dagen noted a myelogram and CT revealed recurrent cervical canal stenosis causing Haycook to likely need

repeat surgery. *Id*.

**B.     The hearing before the ALJ**

At the June 11, 2015 hearing held before Administrative Law Judge Rhonda Greenburg, Haycook testified to disabling impairments of a neck injury, heart condition, bowel obstruction, and depression. Haycook testified that despite undergoing a cervical fusion and bone spur removal several years prior he continued to experience chronic neck spasms, as well as numbness and weakness in his left arm and leg on a "nearly constant basis." Tr. 71; 68; 69. Haycook testified that this would cause him difficulty in picking up items, gripping with his hands, reaching and pushing/pulling. Tr. 69. Haycook stated that he had been prescribed pain medication and medication for his muscle spasms that did not fully relieve his symptoms. *Id.*

Haycook also testified to having a heart condition, which caused him to experience sudden onsets of syncopal episodes, as well as weakness and light headedness. Tr. 72. Haycook stated that he experienced chest palpitations and shortness of breath and lightheadedness with exertion four to five times a week, and that he had a pacemaker put in during 2010. Tr. 72–74. Haycook also testified that he had bowl obstructions which caused him to have nausea, diarrhea and abdominal pain, and that these symptoms could last for several days at a time. Tr. 77. Lastly, Haycook testified to having symptoms of depression causing him to lose interest in previously enjoyed activities. Tr. 93, 96.

Regarding his activities of daily living, Haycook testified that he spent most of the day watching television, reading newspapers and magazines, or visiting with friends or family who stopped by or called him on the phone. Tr. 88; 86. Haycook testified that he did not help out with household chores but could get ready on his own, although he had to take breaks, especially when shaving. Tr. 82; 83; 89. Haycook testified that he could sit for several hours before needing to stand; he could stand for four hours before needing to sit; he could only walk for twenty to

thirty feet at one time; and he could only lift ten pounds. Tr. 78; 81; 82.

A vocational expert testified at the hearing. The ALJ proposed a hypothetical individual who was capable of medium exertion and was able to frequently climb ladders, ropes and scaffolding; could frequently crawl; could occasionally reach overhead; should avoid even moderate exposure to vibration; and who should not work around unprotected heights, dangerous moving machinery or operate heavy industrial equipment. Tr. 98. The vocational expert testified that an individual with these limitations would not be able to perform Haycook's past relevant work, but could perform work as janitor, hand packer, or dishwasher. Tr. 100. The vocational expert further testified that Plaintiff had skills that would transfer to other light and sedentary work, and that there existed various unskilled, light exertional level jobs that he could also perform, such as arcade attendant, small products assembler, and electronics assembler. Tr. 47, 100-02.

## C.    The decision

The ALJ found that during the relevant period, Haycook had severe impairments of a history of coronary disease with placement of a peacemaker and degenerative disease of the cervical spine status-post surgery. The ALJ did not conclude that any of these conditions met or equaled a listed impairment despite Haycook's argument that he met listing 1.04.

The ALJ concluded Haycook has the residual functional capacity:

> [T]o perform medium work as defined in 20 C.F.R. 404.1567(c) except with frequent climbing of ladders, ropes, and scaffolding; frequent crawling; occasional reaching overhead; avoid even moderate exposure to vibrations; no working around unprotected heights, dangerous moving machinery and operating heavy industrial equipment.

Tr. 42. Relying on vocational expert testimony, the ALJ concluded Haycook's impairments would not preclude him from performing work that exists in significant numbers in the national

economy, including work as janitor, hand packer, or dishwasher. Tr. 100.

## II.     Discussion

This suit involves an application for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401, *et seq.* Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration (SSA). The Court's review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than a preponderance but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *Id.* The specific issues raised by Plaintiff in this case are: (1) In finding Haycook did not qualify for a listed impairment, did the Commissioner make a proper decision at step three of the evaluation process?; and (2) Is the ALJ's RFC supported by substantial evidence? [Doc. 9, p.1].

The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, then the Commissioner's decision must be affirmed. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

### A. The Commissioner made a proper decision at step three.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. 404.1520(a). At step one, the ALJ must determine whether the claimant is

engaging in substantial gainful activity, which is work activity that involves doing significant physical or mental activities. *Id.* at 404.1520(b); 404.1572(a). At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *Id.* at 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *Id.*

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement, the claimant is disabled. If not, the ALJ proceeds to the next step.

At step three, the ALJ found that Haycook has severe impairments of a "history of coronary disease with placement of a pacemaker and degenerative disease of the cervical spine-post surgery," as well as a number of non-severe impairments, including diabetes, abdominal complaints, and depression. Tr. 40–41. In finding Haycook did not meet the criteria for 1.04 listing, the ALJ stated that Haycook did not "have nerve root compression, spinal arachnoiditis or lumbar spinal stenosis" and while the evidence showed some degenerative disease of the cervical spine, there was no evidence of compression or stenosis. Tr. 42.

Haycook first argues that the record before the ALJ contained evidence that Haycook suffered from cervical spinal stenosis. [Doc. 9, p. 14]. Haycook's primary argument, however, is based on evidence he submitted to the Appeals Council after the ALJ rendered her unfavorable decision. Haycook argues that that record shows his cervical condition meets all of the requirements of Listing 1.04A. *See* [Doc. 9, pp. 14-18].

If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary

to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council considered the new evidence, adopted it as part of the administrative record, then denied review, finding that the new evidence did not provide a basis for changing the ALJ's decision. Tr. 2. Because the Appeals Council denied review the Court does not evaluate the Appeals Council's decision to deny review, but whether the record as a whole, including the new evidence, supports the ALJ's determination. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

Listing § 1.04 provides for evaluation of disorders of the spine, including herniated nucleus pulposus, spinal stenosis, and degenerative disc disease, "resulting in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Subsection A of Listing § 1.04 requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

*Id.* The regulations relating to musculoskeletal impairments require that examination of the spine should include a detailed description of gait, range of motion of the spine or straight leg-raising in both the sitting and supine positions, and any motor and sensory abnormalities, any muscles spasm, and deep tendon reflexes. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00.E. Evidence of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs. *Id.*

With respect to evidence of a nerve root compression, a CT scan dated October 23, 2015 submitted to the Appeals Council showed (1) moderate central canal stenosis with cord flattening, but opacified CSH surrounding the cord; (2) moderate right and moderate to severe

left foraminal stenosis, with slight progressive narrowing on the right, similar degree of narrowing on the left at C5-6; (3) slightly increased cord deformity with compression of the right half of the cord at C6-7; and (4) mild cord deformity with mild central canal stenosis and mild to moderate bilateral foraminal stenosis at C7-T1. Tr. 847. After reviewing the CT scan, Dr. Dagan stated that Haycook's "recurrent cervical canal stenosis" would "likely need [] repeat surgery." Tr. 889. The CT scan represents some evidence of the first requirement of Listing 1.04A.

To meet the listing criteria, Haycook also must submit evidence of "limitation of motion of the spine" and "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A). Haycook argues the evaluation submitted to the Appeals Council showed that Haycook suffered from neuroanatomic distribution of pain, limitation of motion, muscle weakness, and sensory or reflex loss. Tr. at 830. However, Plaintiff's citation to his own subjective report of his symptoms—here his subjective report to emergency room personnel—does not meet his burden to show, by medical evidence, that he meets *all* of the specified medical criteria as required by the Listing. *See Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D (explaining that "physical findings must be determined on the basis of objective observation during [an] examination and not simply a report of the individual's allegation; e.g., 'He says his leg is weak, numb'").

While Dr. Lawrence's October 21, 2015 examination revealed slightly diminished left extremity deltoid strength (4+/5), triceps (4/5), and biceps (4/5), and his assessment included "proximal left upper extremity weakness," Plaintiff's reflexes were normal, and sensation was grossly normal. Tr. 830-31. Likewise, Dr. Dagen's October 22, 2105 examination showed limited range of motion of the neck, mild weakness in hand intrinsic muscles, positive Hoffman's sign (evidence of abnormal reflexes), and mild diminution in rapid alternating

movements in the hands. Tr. at 890. However, Dr. Dagen's exam also showed he had good strength in the upper extremities and moderate vibratory sense loss in both feet compatible with neuropathy, but no motor loss. Tr. 890-91.

Plaintiff has the burden at this step of demonstrating through medical evidence that his impairments "meet *all* of the specified medical criteria" contained in a particular listing. *Igo v. Colvin,* 839 F.3d 724, 729 (8th Cir. 2016). In this case, Haycook has not done so. The records Haycook submitted to the Appeals Council indicated the existence of only some of the required medical criteria for a step three listing determination. While Haycook argues the October 23, 2015 CT scan and Dr. Dagen's examination the next day provides findings sufficient to satisfy Listing 1.04A, [Doc. 17, p. 3], the exam also showed good strength in the upper extremities and, crucially, no motor loss. Tr. 890–91. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Dr. Lawrence's October 21, 2015 examination similarly revealed normal reflexes and sensation.

The burden on the claimant to produce evidence that his impairments meet all of the specified listing criteria is high. As the U.S. Supreme Court recognized, "[t]he [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [of disability]," as they "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Thus, the listings inquiry at "step three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

Haycook has not met this high burden. Accordingly, the Court finds that the record as a whole including the new evidence submitted to the Appeals Council does not establish that he met all of the requirements of Listing § 1.04A such that he should have been found presumptively disabled at step three of the sequential process during the time period at issue on appeal.

**B. The RFC was supported by substantial evidence.**

The ALJ's RFC concluded Haycook retained the ability to perform a range of medium work despite evidence of greater physical limitations. Haycook argues the RFC is not supported by substantial evidence. [Doc. 9, p. 18].

**1. The record is properly developed.**

As a preliminary matter, Haycook maintains his record is underdeveloped because it was never reviewed by a medical professional and "contains treatment notes documenting Haycook's chronic pain, but does not contain sufficient evidence of Haycook's functional abilities." [Doc. 9, p. 20]. An ALJ has an independent duty to fairly and fully develop the record. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). However, Haycook "bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). A claimant's failure to provide evidence in support of his claimed work-related restrictions "should not be held against the ALJ when there is medical evidence that supports the ALJ's decision." *Steed v. Astrue,* 524 F.3d 872, 876 (8th Cir. 2008). *See Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (lack of physician-imposed work-related limitations supported the ALJ's RFC finding and determination that claimant could return to her past relevant work); *Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006) ("There is no indication in the treatment notes that . . . any of Choate's [] doctors restricted his activities, or advised him to

avoid prolonged standing or sitting."); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (lack of significant, long-term restrictions imposed by treating physicians supported ALJ's determination of no disability).

Defendant argues that Haycook "could have obtained and provided a medical opinion regarding his specific work-related physical functional capabilities, but he did not." [Doc. 13, p. 17]. As the ALJ noted, the lack of any medical opinion classifying Haycook as disabled or seriously incapacitated was in itself telling. Tr. 45, 670, 711. Plaintiff cites *Nevland v. Apfel* for support that this case must be remanded to further develop the record. [Doc. 9, pp. 19–20] (citing 204 F.3d 853 (8th Cir. 2000)). However, as the Eight Circuit recognized in *Nevland,* the formulation of the RFC is a medical question and must be based on *some* medical evidence. *Nevland,* 204 F.3d at 858-59. In that case, "there [was] no *medical* evidence about how Nevland's impairments affect his ability to function now." *Id.* (emphasis in original). That is not true in this case. Here, the ALJ explicitly considered and discussed the medical evidence in evaluating Plaintiff's claim and in assessing limitations as part of his RFC. Tr. 40-46.

When the evidence is insufficient to make a determination about disability, the Agency may request additional records, obtain a consultative examination, ask the claimant for more information, or recontact a medical source. *See* 20 C.F.R. § 404.1520b(c). But, as here, "when there is no indication that the ALJ felt unable to make the assessment [she] did and [her] conclusion is supported by substantial evidence," the ALJ did not need to further develop the record. The RFC is a determination based on all the record evidence, not just the medical opinion evidence. *See Miller*, 784 F.3d at 479; *Wildman*, 596 F.3d at 969; *see also* 20 C.F.R. § 404.1545. The RFC formulation is a part of the medical portion of a disability adjudication—as opposed to the vocational portion—but it is not based only on "medical" evidence. Rather, an ALJ has the duty to formulate the RFC based on all the relevant, credible evidence of record and the record

here is properly developed.

## 2. The RFC is supported by substantial evidence.

Residual functional capacity is what a claimant can still do despite physical or mental limitations. 20 C.F.R. § 404.1545(a); *Masters v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004); Social Security Ruling 96-8p, 1996 WL 374184, *5 (July 2, 1996). An ALJ must formulate the RFC based on all of the relevant, credible evidence of record. *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.") (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). Evidence relevant to the RFC determination includes medical records, observations of treating physicians and others, and a claimant's own description of his limitations. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted). The claimant has the burden to prove his or her RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Haycook argues the RFC is not supported by substantial evidence. [Doc. 9, p. 20–24]. Haycook points to the following facts in the record that he feels detract from the ALJ's conclusion that Haycook could perform medium work:

> (1) Haycook underwent a C4-5 and C5-6 anterior cervical discectomy and fusion in August 2013 and after discharge, he reported that the symptoms in his left arm had resolved, but he continued to have neck muscle spasm pain;
> (2) Two months after his surgery, a nurse practitioner told Haycook that he could return to work by the end of the month, but when Haycook returned to the neurosurgeon he reported continued neck pain, he had difficulty holding his head up without supporting his chin, and he was prescribed a bone stimulator and TENS unit for pain control;
> (3) After Haycook attempted to return to work, he missed work and was concerned with losing his job;
> (4) By January 2014, Haycook had developed involuntary jerking in his left arm and reported that he had to stop working because of the reactivity his job as a paramedic required.
> (5) By April 2014, Haycook was diagnosed with dystonia, degenerative cervical spinal stenosis, and referred to Washington University to a movement specialist.

(6) Although he again returned to work, that job also ended;

(7) The additional evidence submitted to the Appeals Council showed that Haycook suffered from cervical myelopathy, upper extremity weakness, diminution in rapid alternating movements of the hands, decreased sensation in both feet, and involuntary movements; and

(8) His conditions were described as chronic and ongoing and there was no cure for the impairments.

[Doc. 9, pp. 20 – 21].

Contrary to Haycook's contention, the ALJ explicitly noted the medical record items that were in the record at the time of the hearing in formulating the RFC. The ALJ reviewed the records concerning the pacemaker placement and cervical fusion. *Id.* The record contains no evidence that the medication prescribed in conjunction with those procedures "was ineffective or causes significant side effects. [Haycook] has used a TENs unit. Otherwise, there are no other measures used to relieve pain or other symptoms." *Id.* After the most recent near syncope episode, the ALJ noted the record showed Haycook "had not been eating or drinking for the past three to four days due to lack of funds" and that "CT scan of the abdomen was unremarkable." Tr. 44.

Reviewing Haycook's medical record, the ALJ noted the C4-C5 was "fusing nicely," that C5-C6 appeared to be fusing but was not solid yet, and there was no halo around the screw which would indicate instability. Tr. 44, 678, 705. The ALJ further recognized that in April 2014, Plaintiff reported some involuntary facial movements to Dr. Knapp. Tr. 44, 788. Dr. Knapp noted that his dystonia was mildly affecting his lifestyle activities, but that Plaintiff had no pain or discomfort associated with the movements. Tr. 44, 788. On February 17, 2015, the ALJ pointed out, Plaintiff underwent a work physical, which revealed no restrictions in any of the listed body areas/systems including chest, heart, and spine. Tr. 44, 710-11. He was recommended to work without restrictions. Tr. 44, 710-11.

Haycook challenges the ALJ's conclusion that Haycook could perform medium work

because he believes it is contrary to his upper extremities limitations. [Doc. 9, p. 24]. Yet the strongest evidence of extremity limitations, which was not available to the ALJ and first submitted to the Appeals Council, does not support this claim. Dr. Lawrence's October 21, 2015 examination notes only "*slightly* diminished left extremity deltoid strength (4+/5)" with "proximal left upper extremity weakness." Tr. 830–31 (emphasis added). Similarly, Dr. Dagen's examination a few days later revealed that Haycook had *good* strength in the upper extremities with *mild* weakness in hand intrinsic muscles, mild diminution in rapid alternating movements in his hands, and no motor loss. Tr. 890-91 (emphasis added).

Further, there is no requirement that an RFC be supported by a specific medical opinion so long as it is based on some medical evidence. *See Meyers v. Colvin,* 721 F.3d 526, 527 (8th Cir. 2013); *Chapo v. Astrue,* 682 F.3d 1285, 1288089 (10th Cir. 2012). Rather, it is the ALJ's responsibility to formulate Plaintiff's RFC based on the evidence *as a whole*—including the medical and non-medical evidence of record. *See, e.g., Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively."); *Brown v. Colvin*, 14-03497-CV-S-NKL, 2015 WL 5039378, at *7 (W.D. Mo. Aug. 26, 2015) (that there was no medical opinion specifically supporting the RFC was "not a reason to set aside the RFC" when it was based on substantial evidence on the record as a whole).

The ALJ, relying on 20 C.F.R. 404.1529(c), 416.929(c), and Social Security Ruling 96-7p, considered non-medical evidence in addition to the medical record when assessing the credibility of Haycook's statements. Tr. 45–46. The ALJ found Haycook's "activities of daily living are not significantly limited," noting his January 2014 function report evinced his ability to reside alone and care for himself, his home and his dog, including chores, driving, shopping, and handling finances. Although Haycook reported his now live-in girlfriend helped with those

activities at the June 2015 hearing, the ALJ found Haycook's employment history likewise relevant to his ability to functionality, as he "has worked as a paramedic for most of the period during which he alleged disability." Tr. 45.

Thus, considering the medical record and hearing testimony, the ALJ found Haycook could not return to his previous work as a paramedic, but was capable of performing work consistent with the residual function capacity established in her decision. Tr. 46. The additional evidence submitted to the Appeals Council does not alter that decision. Haycook had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision.

**III.    Conclusion**

The Commissioner's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 26, 2017
Jefferson City, Missouri